565 So.2d 545 (1990)
Melvin GRIFFIN and Larry Griffin
v.
STATE of Mississippi.
No. 07-KA-59406.
Supreme Court of Mississippi.
June 20, 1990.
Robert E. Buck, Greenville, for appellants.
Mike C. Moore, Atty. Gen. and Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
En banc.
HAWKINS, Presiding Justice, for the Court:
Melvin Griffin and Larry Griffin were convicted in the circuit court of the Second Judicial District of Bolivar County on a three-count indictment charging them with violation of drug statutes. On a motion for a new trial, the circuit court sustained the motion as to two of the counts, and overruled as to one count. While their appeal was pending on the one count, the Griffins fled the state, and were not captured until several years later. The State then moved to set aside the order setting aside their convictions and granting a new trial, and to reinstate their convictions.
The circuit judge, believing he had made an error at law in granting a new trial in the first instance, sustained the State's motion and reinstated the Griffins convictions on the remaining counts of the indictment.
We find the circuit court did not have the authority to reinstate these convictions and reverse.

FACTS
On May 16, 1983, Melvin and Larry Griffin were jointly indicted by the grand jury of the Second Judicial District of Bolivar County on a three-count indictment.
Count I of the indictment charged the defendants with a continuing conspiracy to sell pentazocine from July 1, 1982 until November 15, 1982. Count II charged Melvin Griffin with the sale of pentazocine on November 10, 1982. Count III charged both defendants with possession with the intent to sell pentazocine from November 11, 1982 until November 15, 1982.
At trial at the regular term on November 30, 1983, the jury returned verdicts of guilty on all counts.
Melvin was sentenced to serve 15 years on Count I of which 10 years were suspended, 20 years on Count II of which 10 were suspended, and 20 years on Count III of which 10 were suspended. Larry was sentenced to serve 15 years on Count I of which 5 years were suspended and 20 years on Count III of which 10 years were suspended.
On December 16, 1983, during the regular term, the Griffins filed a motion for a new trial or in the alternative a judgment notwithstanding the verdict.
On December 30, 1983, the court held a hearing on the motion for a new trial. The *546 court noted that the motion had been made before the end of the November 1983 Term, and had been taken under advisement. After hearing arguments from both parties, the court once again took the matter under advisement.
On March 30, 1984, the lower court, basing its decision on Stinson v. State, 443 So.2d 869 (Miss. 1983), decided two days before the Griffins were sentenced, granted the motion for a new trial on Counts II and III, but denied a new trial on Count I.
The Griffins appealed their convictions on Count I. This Court affirmed. Griffin v. State, 480 So.2d 1124 (Miss. 1985).
While their appeal was pending, and they were free on bond, they fled the state, but were later recaptured. Melvin was captured in Indiana and Larry was captured in Michigan.
On April 23, 1987, after the Griffins were recaptured, the State filed a motion requesting that the order granting a new trial on Counts II and III be vacated and that the prior sentences be reinstated. The motion was granted on September 28, 1987. The lower court based its decision on Breckenridge v. State, 472 So.2d 373 (Miss. 1985), and Dixon v. State, 465 So.2d 1092 (Miss. 1985), which were decided after the motion for a new trial was granted in 1984.
The Griffins appeal the circuit court's sustaining the State's motion to vacate and reinstating their judgments of conviction.

LAW
The Griffins' argument is that the State, having failed to perfect a cross-appeal from the circuit court order granting them new trials on Counts II and III of the indictment following their direct appeal from the order overruling their motion for a new trial as to Count I, barred the State from thereafter seeking to have the order granting a new trial set aside.
It is unnecessary that we address the question of whether the State should, or indeed could have cross-appealed the order insofar as it granted the Griffins a new trial.
Nor need we address the question of whether the State was somehow barred from seeking to persuade the circuit court to change its minds as long as it had jurisdiction of the case.
The central issue is whether the circuit court had the legal authority three years later to set aside the order.[1]
Fortunately for the Griffins, we must hold that the circuit court had no authority to reinstate their convictions as to Counts II and III of the indictment.
The motion for a new trial was duly filed by the Griffins at the regular November Term, 1983, of the circuit court of the Second Judicial District of Bolivar County. The court took the matter under advisement for hearing in vacation, which was heard on December 30. After the hearing the court again took the matter under advisement for final order. On March 30, 1984, during vacation, the court granted the Griffins the new trial as to Counts II and III of the indictment, and overruled their motion as to Count I. At this juncture the circuit judge had scrupulously followed the requirements of Miss. Code Ann. § 99-17-47,  49 (statutes authorizing granting a new trial in criminal cases); Rule 5.16 Miss.R.Crim.Pr.; and Miss. Code Ann. § 11-7-131,  133, authorizing circuit judge to act in vacation on matters taken under advisement at regular term.
There the matter remained inactive on the court docket through six successive regular terms of court until the court set aside its order and reinstated the convictions of Counts II and III on September 28, 1987. This last order was likewise entered *547 in vacation. Miss. Code Ann. § 9-7-33 (Supp. 1983).
When the circuit judge entered the original order granting a new trial as to Counts II and III of the indictment, the order served three functions:
(1) it severed Counts II and III from Count I, and made them separate charges,
(2) it set aside convictions as to these two counts and,
(3) it restored on the pending docket of the court Counts II and III of the indictment.
It can thus be seen the first two functions related to an accomplished result, and only the third function dealt with a future matter.
As to the third function, a pending trial, this of necessity was interlocutory and subject to any order of the court which could be rendered in any pending action before the court, i.e., it was subject to continuance from term to term, dismissal or actual trial.
But what authority did the court have as to setting aside its previous order insofar as it had set aside the Griffins' conviction? Art. 6, § 156 of our Constitution gives the circuit court jurisdiction to hear all criminal matters, and § 158 requires that a circuit court be held in each county at least twice a year.
A court can only act as specifically authorized by either the Constitution or by statute. In Hyde Const. Co. v. Highway Materials Co., 248 Miss. 564, 159 So.2d 170 (1963), corrected 162 So.2d 856, this Court construed what are currently Miss. Code Ann. § 11-1-7, 11-7-131,  133, and held that Miss. Code Ann. § 11-1-7 provided that cases not heard at a regular term of court were continued by law until the next regular term. Miss. Code Ann. § 11-7-131 authorized a court to "take a case under advisement until the next term," but at the next term the judge was required to deliver his opinion in writing. Finally, Miss. Code Ann. § 11-7-133 authorized the court to deliver opinions and render a final judgment in vacation on matters taken under advisement at a regular term. Id. at 573, 159 So.2d at 173.
We likewise construed (presently) Miss. Code Ann. § 11-7-121 as authorizing a circuit court to hear and determine demurrers and motions in vacation, but not to try cases in vacation. Id. at 575, 159 So.2d at 174.
Noting that courts and judges, acting in vacation, have only statutory authority to act, and that if they acted in vacation without authority, their action was void. Id. at 574, 159 So.2d at 174. We then held that after a court had taken under advisement during term time motions to set aside default judgments and for a new trial, upon which no new orders were entered during vacation or at the succeeding term, that the court had no authority thereafter to enter an amended judgment. We also held, however, that the court did have the authority under Miss. Code Ann. § 11-7-121, despite the intervening court term to order a new trial.
In Evers v. Truly for Use and Benefit of Town of Fayette, 317 So.2d 414 (Miss. 1975), we held that where a circuit court had entered an order during the court term overruling a motion for a new trial, it lacked the power after adjournment to vacate the judgment.
In U.S. Fidelity & Guaranty Co. v. Strange, 360 So.2d 682 (Miss. 1978), a hearing was held at the April term of the Jackson County circuit court upon a writ of garnishment. The court took the cause under advisement for a decision in vacation. No further action was taken in vacation or at the succeeding July term of court. Thereafter, in vacation in August an order was entered overruling the garnishee's motion to dismiss, and in vacation in September a final judgment entered against the garnishee. We held that the authority of the order rendered at the April term taking the matter under advisement ended with the first day of the succeeding July term. The cause was then remanded for hearing on the merits. It should be noted that no judgment had ever been entered by the court at the preceding April term.
*548 We have repeatedly held, however, that when a motion for a new trial is made during term time and no order is entered thereon during the term, nevertheless the judgment is not a final judgment as long as the motion to set it aside is pending and undisposed of. O'Bannon v. Greenville Commercial Body Co., 159 Miss. 68, 71, 132 So. 87, 88 (1931). See also, Berryhill v. Byrd, 384 So.2d 1026, 1028 (Miss. 1980); Long v. Magnolia Hotel Co., et al., 236 Miss. 655, 111 So.2d 645 (1959) (held that an invalid order subsequently entered in vacation on motion for new trial does not operate to reinstate original judgment, and the motion remains pending); Willette v. State, 219 Miss. 793, 69 So.2d 407 (1954).
Of course, here we do not have a case of a motion for a new trial having been duly and timely made, and upon which no valid order was subsequently entered, but a motion for a new trial in which the court had made and entered a valid order sustaining it and granting a new trial. Nevertheless, the task of making an accurate survey of the limit of the circuit court's authority remains difficult, and the boundary elusive. It is clear that Art. 6, § 158 of the Constitution contemplates circuit courts being held at fixed, stated terms provided by statute. Walton v. State, 147 Miss. 851, 112 So. 790 (1927); 21 C.J.S. Courts §§ 147-148 (1940). Even though the circuit courts of this State have had fixed terms, as the above cases demonstrate, the Legislature by various enactments prior to 1983 had granted circuit courts wide latitude in taking official actions in vacation.
Compounding the task of defining the limits of the circuit judge's authority, the Legislature in 1983 enacted Ch. 388, Laws, 1983, Miss. Code Ann. § 11-1-16, which provides:
§ 11-1-16. Proceedings in vacation; jurisdiction and authority of judge.
(1) Notwithstanding the provisions of any other law to the contrary, the judge of any circuit ... court or any other court of record shall, in vacation, and in the same manner as at a regular term, have jurisdiction to hear and determine and make and enter judgments, orders and decrees in all cases, civil or criminal, which are pending in the court and which were triable at the preceding term... . Petit juries may be impaneled in such cases in the same manner as in termtime. All judgments, orders and decrees which the judge may render or make in such cases tried shall be signed by him and thereupon be entered and recorded on the minute book of the court in which the case or matter is pending, and shall have the same force and effect as if made, entered and recorded in termtime. Appeals may be had and taken therefrom when so entered and recorded, as in other cases, in like manner as is provided by law when cases are tried in termtime.
(2) The provisions of this section shall be supplemental and in addition to all other jurisdiction and authority which the judge of any such court may lawfully exercise in vacation or at a special term.
SOURCES: Laws, 1983, ch. 388, eff from and after passage (approved March 23, 1983).
It should also be noted that the Legislature by Ch. 502, § 22, Laws 1985, Miss. Code Ann. § 9-7-3 (Supp. 1985), authorizes the senior circuit judge of each circuit court district to set the court terms in his district by court order.
It is thus clear that there has been a vast expansion by statutory enactment of the times within which circuit judges are lawfully empowered to conduct court affairs.

WHAT TO DO
Other states have addressed this same question. 66 C.J.S. New Trial, § 212 (1950); 58 Am.Jur.2d New Trial §§ 567-568, 570: "While judicial power, at a subsequent term, to vacate an order granting a new trial has been sustained, the general rule is otherwise." Id. § 570. See also, Annotation, Power of Court to Vacate or Modify Order Granting New Trial in Civil Case, 61 A.L.R.2d 642 (1958); Annotation, Power of Trial Court or Judge to Revoke Order Granting New Trial in Criminal Case, 145 A.L.R. 400 (1943).
*549 In Hefton v. State, 206 Ind. 663, 190 N.E. 847 (1934), the Indiana Supreme Court held:
In a note to the case of Luke v. Coleman, Ann.Cas. 1913B, 485, there is a large collection of cases from many jurisdictions which hold that at the term at which a motion for a new trial is granted, the court may vacate the judgment, he cannot do so at a subsequent term.
The reason of the rule is obvious. There must be some point where the litigation in the lower court terminates and the right to appeal to the higher court begins.
Id. at 668, 190 N.E. at 849-850. And in Commonwealth v. White, 289 Ky. 99, 157 S.W.2d 747 (1941), the Kentucky Court of Appeals held:
Therefore, it would seem that the court correctly declined to set aside the setting aside order at the following May term of the court, since the order setting aside the verdict of the jury at the previous January term of the court was, in effect, the granting of a new trial, and it became final upon the adjournment of that (January) term of court. Respondent [the circuit judge], therefore, did not possess the right to reinstate the verdict of the jury at the succeeding or any later term of the court.
Id. at 104, 157 S.W.2d at 750.
We find the rationale of the Indiana and Kentucky courts correct and also hold that the dispositive portion of the circuit judge's order setting aside the Griffins' convictions under Counts II and III of the indictment had the same finality as a judgment, and certainly with no further action being taken therein in the ensuing regular term of court, the circuit court was without authority thereafter to reinstate the convictions.
Some courts have held that the order granting or denying a new trial itself concludes the matter. Thus in Wenzoski v. Central Banking System, Inc., 43 Cal.3d 539, 736 P.2d 753, 237 Cal. Rptr. 167 (1987), the California Supreme Court held:
It has long been the rule that "A final order granting or denying [a motion for a new trial], regularly made, exhausts the court's jurisdiction, and cannot be set aside or modified by the trial court except to correct clerical error or to give relief from inadvertence under C.C.P. 473." [Emphasis original]
Id. at 541, 736 P.2d at 754, 237 Cal. Rptr. at 168.
In Huffman v. Little, 341 So.2d 268 (Fla. Dist. Ct. App. 1977), the court held:
An order granting a new trial confers a substantive right and the order is not interlocutory in nature. Hoffman v. Jackson's Minit Markets, Inc., 313 So.2d 722 (Fla. 1975). Therefore, unlike interlocutory orders it does not remain subject to modification. Cf. Sterling Drug, Inc. v. Wright, 307 So.2d 494 (Fla.2d DCA 1975). In fact, in the absence of fraud or clerical error, once the motion for a new trial is determined it is not even subject to a motion for rehearing. State v. Burton, 314 So.2d 136 (Fla. 1975); Mathis v. Butler, 128 So.2d 142 (Fla.2d DCA 1961); DePadro v. Moore, 215 So.2d 27 (Fla.4th DCA 1968). As to effect of motion for new trial or rehearing, see generally, Trawick's Florida Practice and Procedure, 1975, Section 26-1.
Id. at 269.
Finally, we believe the Utah Supreme Court's language in Drury v. Lunceford, 18 Utah 2d 74, 76-77, 415 P.2d 662, 663-664 (1966) bears quoting in full:
When this has been done and the court has ruled upon the motion, if the party ruled against were permitted to go beyond the rules, make a motion for reconsideration, and persuade the judge to reverse himself, the question arises, why should not the other party who is now ruled against be permitted to make a motion for re-re-consideration, asking the court to again reverse himself? Tenacious litigants and lawyers might persist in motions, arguments and pressures and theoretically a judge could go on reversing himself periodically at the entreaties of one or the other of the parties ad infinitum. This reflection brings one to realize what an unsatisfactory situation would exist if a judge could carry in his *550 mind indefinitely a state of uncertainty as to what the final resolution of the matter should be. [Emphasis original]

Even though the new rules of procedure had as a part of their purpose the removing of undue technicalities and rigidities in the law, and are to be liberally construed to effectuate justice, nevertheless, they were designed to provide a pattern of regularity of procedure which the parties and the courts could follow and rely upon. When the procedure authorizing a motion for a new trial has been followed and, pursuant to proper notice, the parties have made their representations to the court, and the court has duly considered and made his decision upon that motion, that completes both the duty and the prerogative of the court. In order to avoid such a state of indecision for both the judge and the parties, practical expediency demands that there be some finality to the actions of the court; and he should not be in the position of having the further duty of acting as a court of review upon his own ruling.
Another important consideration in the problem here presented is that when the trial court has made his decision granting the new trial, that has the effect of vacating the judgment and the case reverts to its status before the trial was had. The party favored by the motion acquires an important right in his entitlement to a new trial, which he should not be arbitrarily deprived of, nor should he be subject to the possible whim or caprice of the judge as to whether he can really have the new trial which has been ordered or not.
It should be observed that what we have said herein is intended to apply to the fact situation shown in the instant case where, pursuant to regular procedure, the court has acted deliberately and advisedly in granting the new trial. However, we also recognize that there may be situations where an order denying or granting a new trial may have been made by inadvertence or mistake, or where there was some irregularity in connection with the obtaining or the granting of the order, in which instance the court could of course act to correct any such mistake or irregularity.
We are not required in this case to decide whether we should adopt the holdings of the California, Florida and Utah courts that an order granting a new trial is not subject to being set aside even at the same term of court except for fraud, mistake, or the like.
Rather, we find that the dispositive portion of the order setting aside the Griffins' convictions had all the finality of a final judgment, and clearly the passage of the next term of court deprived the circuit court of any further authority to reinstate them.
REVERSED, AND CAUSE REMANDED FOR NEW TRIAL ON COUNTS II AND III OF THE INDICTMENT.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] If the court had such authority, the question would not be whether the State could complain in event it refused to do so (no attempt having been made by the State to perfect a cross-appeal as to the order), but whether the Griffins could complain in event the court changed its mind. There is nothing about the Griffins' conduct that would make it unconscionable, unjust or unfair for the court to reinstate the convictions. Had they chosen to remain in Mississippi they long since would have been retried pursuant to the original order granting a new trial. They had other plans.